UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID SOCOL, on behalf of himself and all other individuals similarly situated,<br><br>Plaintiff,<br><br>against<br><br>NEXAR, INC.<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff David Socol ("Plaintiff") brings this Class Action Complaint against Defendant Nexar, Inc. ("Nexar" or "Defendant") individually and on behalf of all others similarly situated, and alleges upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, , as follows:

**NATURE OF THE CASE**

1.      Nexar is a company that provides and sells smart dash cams and promotes its car dashboard camera products as standing out with "reliable security features" and that offer automatic cloud uploads of critical incidents, AI-driven insights, and real-time road alerts.[1] This action seeks damages for Plaintiff and other consumers who were victims of Nexar's's fraudulent and misleading representations concerning the dash cam's security and privacy features.

2.      Nexar monetizes users' data and recordings by repackaging them into various products, including Nexar's's CityStream map.  The CityStream map uses recent and blurred images captured by Nexar dash cams and superimposes them on a publicly available map, annotating items of interest such as traffic signals and stop signs, damaged roads, and other hazards.

---

[1] https://www.getnexar.com/ (last accessed October 6, 2025)

3. Upon information and belief, on or before September 2025, a hacker accessed a database of video recordings captured from Nexar cameras. The hacker then sent videos from this database that clearly show the faces of multiple passengers riding inside of what appears to be a rideshare car.

4. Upon information and belief, the hacker allocated and accessed the Nexar dashcam video recordings on an inadequately or improperly secured Amazon Web Services (AWS) file "bucket" stored in the cloud.

5. Upon information and belief, each Nexar dashcam has with it a "key" associated with the Nexar database of video recordings. This key allows users to upload their own camera's data to the database. Critically, however, the key also allows users to access the data uploaded from other users' cameras.

6. Nexar holds itself out as "unique compared to other car cameras" and that it "stands out" with "reliable security features." Nexar further claims that that "[w]hile privacy laws may vary between jurisdictions, Nexar is committed to protecting personal data in accordance with this Privacy Policy, customary industry standards, and such appropriate lawful mechanisms and contractual terms requiring adequate data protection, regardless of any lesser legal requirements that may apply in the jurisdiction to which such data is transferred."[2]

7. Nexar also represents in its Privacy Policy that, with respect to its training data, "[d]espite the inclusion of non-anonymized content, we uphold the highest standards of data security and privacy: Access to training data is strictly confined to the team members directly involved in the AI development process; We employ advanced encryption and stringent access controls to safeguard against unauthorized access to the data; The training data is retained exclusively for a limited period of time for the training purposes for which it was collected, ensuring it is not used beyond its intended scope; The training data closely mirrors the lifecycle of

---

[2] https://www.getnexar.com/privacy/ (last accessed October 29, 2025)

personal data. When a User decides to delete their rides or deactivate their account, we ensure that the corresponding training data is also deleted from our systems."[3]

8.  Nexar further promises that it "anonymize[s] Camera-Generated Content gathered and shared among Users. The raw images may capture individuals, license plates, and other personal data recorded via the Camera (e.g., papers left on the dashboard, parking cards, etc.). ***To prevent the identification of individuals in such context, we make sure that all identifiable elements are anonymized***. The anonymization is performed directly on the User's device, even before the information is sent to Nexar."[4]

9.  Finally, Nexar promises that with respect to its customers' personal data "We and our hosting services implement systems, applications and procedures to secure your personal data, to minimize the risks of theft, damage, loss of information, or unauthorized access or use of information. These measures provide sound industry-standard security, confirmed also by Nexar's ISO/IEC 27001 and 27018 certifications."[5]

10. Purchasers of Nexar's Camera products rely on such representations of anonymity, safety and security when choosing to purchase Nexar's products.

11. When purchasing Nexar's Camera products, Plaintiff and other consumers reasonably relied on Nexar's representations which omitted that the cameras were not secure, did not, in fact, protect users' privacy, and accordingly, did not abide by any industry standard.

12. Accordingly, Plaintiff and other consumers of Nexar's Camera products did not receive the products that they were promised, *i.e.*, dash cam cameras that protected personal data, did not share their data with any unauthorized third parties, that anonymized their collected data, and that secured their personal data collected by end-to-end encryption and safeguarded against unauthorized access.

---

[3] *Id.*

[4] *Id. (emphasis added)*

[5] *Id.*

13. Plaintiff brings this class action on behalf of: (i) all individuals in the United States who purchased Nexar's dash cam cameras, during the applicable statute of limitations period (the "Nationwide Class"); and (ii) all individuals in New York State who purchased Nexar's dash cam cameras, during the applicable statute of limitations period (the "New York Subclass"), to recover restitution and damages, and for injunctive relief.

## JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the proposed Class who are diverse from Defendant, and (4) there are more than 100 proposed Class members.

15. This Court has personal jurisdiction over Defendant because its principal place of business is located in this District. In addition, Defendant has purposefully availed themselves to the law, rights, and benefits of the State of New York.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a)(1) because Defendant is headquartered in this District and many Class Members reside in the Southern District of New York, and throughout the state of New York. Moreover, a substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

17. Plaintiff Socol is a resident and citizen of Westchester County, New York, who purchased and used a Nexar dash cam camera to record his travels.

18. Defendant Nexar is a Delaware corporation, with its headquarters located at 135 W 41st Street, New York, New York 10036.

19. Plaintiff reserves the right to amend this complaint to add or replace defendants, including without limitation any officer, director, employee, supplier, or distributor of any defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## FACTUAL ALLEGATIONS

20. Nexar markets and sells its dash cams throughout the United States. Consumers can purchase these products online, either directly through Nexar or another online retailer. Nexar also utilizes Real-Time mapping software, "CityStream Live", with their dash cams. Although the CityStream System requires users to opt-in for their dash cam data to be used for mapping purposes, even if users have opted in, they anticipate that their data is being protected within the firewalls set up by Nexar.

21. Many users, including Plaintiff, selected Defendant' dash cam in reasonable reliance on Defendant's representations and omissions concerning privacy and security.

22. Specifically, Plaintiff purchased the Nexar Beam GPS Dash Cam online through the Amazon website on August 23, 2022, for personal use. Since having purchased it, Plaintiff Socol has utilized the dash cam to record his travels.

23. Plaintiff uses Nexar's app on his phone to upload his dash cam footage and data which automatically uploads to Nexar's cloud-based system.

24. When purchasing the dash cam and utilizing Nexar's systems to store his data, Plaintiff reasonably believed that Defendant Nexar would have proper security measures in place to protect his data and that Nexar valued their consumer's privacy.

25. Plaintiff and other purchasers of Nexar's products and would not have purchased them, or would have paid less, had Defendant truthfully represented its privacy and security

practices. Defendant knew that consumers relied on their statements concerning the privacy and security features of the dash cams as well as their CityStream Service.

26. Consumers, including Plaintiff, reasonably believed and relied upon Nexar's representations and omissions concerning the privacy and security of its products.

27. In August 2025, consumers discovered the data associated with their dash cams and their CityStream data did not comply with the ISO/IEC 27001[6] and 27018[7] certifications - in stark contrast to what Nexar claimed in their Privacy Policy.

28. In September 2025, a hacker obtained access and entered Nexar's cloud-based data and reached out to 404Media to bring to light Defendant's lax privacy practices. In several images and videos captured by the hacker and shared, individuals appear clearly unaware that a third party may be watching or listening in. For example, one of the images shows a driver heading towards the entrance of CIA headquarters. Other images show drivers around sensitive U.S. Department of Defense locations.

29. Despite Nexar's claims of anonymizing data, the AWS bucket accessed by the hacker and shared contained unblurred and non-anonymized video imagery that fails to provide identity protection.

30. Upon information and belief, the hacker also found a list of companies and agencies that may have interacted with Nexar's data including, Apple, Microsoft, Amazon, Google, Niantic, transportation companies Lyft and Waymo, and numerous AI and logistics focused companies.

---

[6] The ISO 27001 standard, specifies the requirements for establishing, implementing, maintaining, and continually improving an Information Security Management System (ISMS). *See also* https://www.kiteworks.com/risk-compliance-glossary/iso-27000-standards/

[7] The ISO 27018 is an extension that focuses on specifically protection Personally Identifiable Information (PII) in public cloud environments. *See also* https://www.kiteworks.com/risk-compliance-glossary/iso-27000-standards/

## CLASS ACTION ALLEGATIONS

31. Plaintiff, individually and on behalf of all others similarly situated, brings this class action pursuant to Fed. R. Civ. P. 23.

32. The proposed Class is defined as follows:

**Nationwide Class:** All persons within the United States who purchased Defendant's dash cams or opted in to the CityStream, during the applicable statute of limitations.

**New York Subclass:** All persons within the state of New York who purchased Defendant's dash cams or opted in to the CityStream, during the applicable statute of limitations.

33. The following are excluded from the classes: (1) government entities; (2) any Judge presiding over this action and members of his or her family; (3) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which a Defendant or its parent has a controlling interest (as well as current or former employees, officers, and directors); (4) persons who properly execute and file a timely request for exclusion from the Class; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (6) Plaintiff's counsel and Defendant's counsel; and (7) the legal representatives, successors, and assigns of any such excluded persons.

34. The classes described in this complaint may be jointly referred to as the "Class" or "Classes" and members of the proposed classes may be jointly referred to as "Class members." Plaintiff reserves the right to amend or modify the Class definitions with greater specificity, further division into subclasses, or with limitation to particular issues as discovery and the orders of this Court warrant. In addition, the Court can define the Classes and create additional subclasses as may be necessary or desirable to adjudicate common issues and claims of the Class members if, based on discovery of additional facts, the need arises.

35. *Numerosity*: The proposed Class is so numerous that individual joinder of all Class members is impracticable. On information and belief, Class members number in the thousands.

The precise number or identification of members of the Class is presently unknown to Plaintiff but may be ascertained from Defendant's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

36. *Commonality*: Questions of law or fact common to the Class include, without limitation:

    a) Whether the marketing, advertising, packaging, labeling, and other promotional materials for the dash cams were deceptive; Whether Nexar's actions violate the consumer protection statutes invoked herein;

    b) Whether Nexar's marketing of their dash cams and CityStream Service was likely to deceive or mislead reasonable consumers;

    c) Whether Nexar's conduct constitutes violations of the laws and statutes asserted herein;

    d) Whether Nexar's conduct was knowing and/or negligent;

    e) Whether Defendant was unjustly enriched at the expense of Plaintiff and Class members;

    f) Whether Plaintiff and Class members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

    g) Whether Plaintiff and the other Class members have been injured and the proper measure of their losses as a result of those injuries;

    h) Whether Plaintiff and the Class members are entitled to injunctive, declaratory, or other equitable relief; and

    i) Whether, as a result of Nexar's conduct, Plaintiff and Class members are entitled to an award of reasonable attorneys' fees, prejudgment interest, or costs of suit.

37. Defendant Nexar engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

38. *Typicality*: The claims or defenses of Plaintiff are typical of the claims or defenses of the Class. Class members were injured and suffered damages in substantially the same manner as Plaintiff, Class members have the same claims against Defendant relating to the same course of conduct, and Class members are entitled to relief under the same legal theories asserted by Plaintiff.

39. *Adequacy*: Plaintiff will fairly and adequately protect the interests of the proposed Class and has no interests antagonistic to those of the proposed Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions.

40. *Predominance*: Questions of law or fact common to proposed Class members predominate over any questions affecting only individual members. Common questions such as whether Defendant owed a duty to Plaintiff and the Class and whether Defendant breached its duties predominate over individual questions such as measurement of economic damages.

41. *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of the Class is impracticable. Many members of the Class are without the financial resources necessary to pursue this matter. Even if some members of the Class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Defendant's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

42. *Manageability*: Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

43. The Class may be certified pursuant to Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

44. The Class may also be certified pursuant to Rule 23(b)(3) because questions of law and fact common to the Class will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

45. Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## CAUSES OF ACTION
## COUNT I
**Violations of New York's Deceptive Acts and Practices Law**
**New York General Business Law § 349**
**(on behalf of Plaintiff and the New York Subclass)**

46. Plaintiff repeats and re-allege the allegations above as if set forth herein.

47. Plaintiff and other members of the New York Subclass are "consumers" in accordance with New York General Business Law Defendant committed acts of unfair competition, as described above, violation the Unfair Competition Law ("GBL") § 349.

48. By the acts, omissions and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making false representations about the protection and security measures that protect and guard Nexar dash cam users' data.

49. The foregoing deceptive acts and practices were directed at consumers.

50. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent and omit information concerning the security and privacy of the Nexar dash cams and the CityStream Service.

51. Plaintiff and the New York Subclass members have suffered injuries as a result because (a) they would not have purchased the products if they had not been misled by Defendant's

deceptive practices; and (b) they overpaid for Defendant's products on account of and in reliance of Defendant's misrepresentations and omissions.

52. On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief under Section 349 of the New York General Business Law.

**COUNT II**
**Violation of New York Deceptive Acts and Practices Law**
**False Advertising**
**New York General Business Law § 349**
**(on behalf of Plaintiff and the New York Subclass)**

53. Plaintiff repeats and re-allege the allegations above as if set forth herein.

54. Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the GBL. Defendant committed deceptive acts and practices in the State of New York by making the above misrepresentations directed to consumers in New York.

55. Defendant's statements and omissions concerning the security and privacy of the dash cams and the CityStream Service, alleged above, were advertisements in accordance with GBL § 350.

56. At all relevant times, Defendant conducted trade and commerce in New York and elsewhere within the meaning of GBL § 350, and profited from the sale of dash cams within New York.

57. GBL § 350 allows a plaintiff to recover "actual damages or five hundred dollars, whichever is greater." *Id*. § 350-e.

58. Plaintiff and New York Subclass Members were injured by Defendant's misrepresentations because (a) they would not have purchased the products if they had not been misled by Defendant's misrepresentations; and (b) they overpaid for Defendant's products on account of Defendant's misrepresentations and omissions.

59. As a direct and proximate result of Nexar's conduct, Plaintiff and the other members of the Sublclass have thus suffered damages.

60. On behalf of himself and the other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs and any other just and proper relief available under Section 350 of the New York General Business Law.

## COUNT III
### Unjust Enrichment
**(In the alternative and on behalf of Plaintiff and the National Class and, alternatively, the New York Subclass)**

61. Plaintiff re-alleges and incorporates the allegations contained above as if fully set forth herein.

62. Plaintiff and the other members of the Class conferred benefits on Nexar by purchasing their dash cams and opting in to the CityStream Service.

63. Defendant has been unjustly enriched in retaining the revenues derived from the purchase of the dash cams by Plaintiff and the other members of the Class.

64. Retention of those monies under these circumstances is unjust and inequitable because Defendant's marketing of the Products was misleading to consumers, which caused injuries to Plaintiff and the other members of the Class because they would have not purchased the dash cams or opted in to the CityStream service had Defendant disclosed that the dash cams and CityStream Service being marketed and sold were not secure.

65. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and the other members of the Class is unjust and inequitable, Defendant must pay

restitution to Plaintiff and the other members of the Class for their unjust enrichment, as ordered by the Court.

## DEMANDS FOR RELIEF

66. Plaintiff demands a trial by jury on all issues.

**WHEREFORE,** Plaintiff, on behalf of themselves and the Class, pray for judgment and relief against Defendant as follows:

(a) For an order certifying and declaring this action to be a proper class action and appointing Plaintiff as the representative of the Class and Plaintiff's counsel to serve as Class Counsel;

(b) For an order enjoining Defendant Nexar from continuing to engage in the unlawful conduct set forth herein;

(c) For an order awarding restitution of monies Defendant Nexar wrongfully acquired by its illegal and deceptive conduct;

(d) For an order disgorgement of monies Defendant Nexar wrongfully acquired by its illegal and deceptive conduct;

(e) For compensatory and punitive damages, including actual and statutory damages, arising from Nexar's wrongful conduct and illegal conduct;

(f) For an award of costs and expenses incurred in this action, including a reasonable allowance of attorney's fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's reasonable expenses incurred in the course of prosecuting this action; and

(g) Granting such other and further relief as the Court may deem just and proper

Dated: October 29, 2025

*/s/ Jason P. Sultzer*
**SULTZER & LIPARI, PLLC**
Jason P. Sultzer, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

*Counsel for Plaintiff and the Putative Class*